Gaurav Bobby Kalra (SBN 219483)
Attorney at Law
www.gbkattorney.com
1024 Iron Point Road, Suite 100
Folsom, California 95630
Telephone: (916) 357-6777
Facsimile: (916) 404-4270
gbklaw@icloud.com

Attorneys for Plaintiffs
David Glenwinkel and
Global Marketing and Development, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| David Glenwinkel, an individual and California resident, Global Marketing and Development, Inc., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Todd D. Lubar, an individual and Maryland resident, Michael Gabor, an individual and Maryland resident, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR**<br>1. Misappropriation of Trade Secrets; and<br>2. Breach of Written Contract. |

Plaintiffs David Glenwinkel and Global Marketing and Development, Inc., allege the following against defendants Todd D. Lubar and Michael Gabor ("Defendants"), and Does 1 – 10:

<u>Jurisdiction and Venue</u>

1. This Court has jurisdiction over all causes of action asserted in this Complaint pursuant to California Constitution, Article VI, Section 10 and California Code of Civil Procedure

1
**COMPLAINT**

Section 410.10, by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $75,000, and because this case is a cause not given by statute to other trial courts. The jurisdiction is also founded upon diversity jurisdiction because Plaintiff Glenwinkel is a California citizen and Defendants are citizens of the State of Maryland.

2. Venue is proper in this Court pursuant to Code of Civil Procedure Sections 395 and 395.5, because Defendants transact business within this Federal District, and the unlawful conduct alleged herein was directed to harm, and did harm, a Plaintiff that is resident of this District.

## The Parties

3. Plaintiff Global Marketing Development, Inc. ("GMD"), is a Nevada corporation that is qualified to do business in California and conducts business in Placer County at 3240 Professional Drive, Auburn, California 95602. GMD is a corporate entity that purchased certain assets from a Maryland-based company, 5 Star Management Services, Inc. ("5 Star"). The asset purchase agreement is not at issue in this Complaint. GMD purchased assets and transferred licenses from 5 Star to enter the debt mitigation industry. GMD acquired these assets and licenses as of March 10, 2015, and is servicing thousands of clients in the debt mitigation industry.

4. David Glenwinkel is an individual and California resident, residing in Placer County. Plaintiff Glenwinkel is the sole shareholder, President, and Chairman of the Board of GMD at the time of the 5-Star transfer. Plaintiff Glenwinkel further developed the 5-Star trade secrets that were acquired by GMD as part of the 5-Star asset purchase. Plaintiff Glenwinkel has a pecuniary interest in the current state of the intangible assets that are at issue in this Complaint.

5. Defendant Michael Gabor was a partner or investor with Five Star before Five Star sold its assets to Plaintiffs. Defendant Gabor is an individual and a citizen of the State of Maryland.

6. Defendant Todd D. Lubar is an individual and a citizen of the State of Maryland. Before the Five Star asset sale to Plaintiff GMD, Defendant Lubar ran the Five Star customer service center. Defendants Gabor and Lubar (Collectively, "Defendants") worked in conspiracy with one another to create different corporate entities and businesses to exploit the data they misappropriated from GMD.

## FACTS COMMON TO ALL CAUSES OF ACTION

### GENERAL BACKGROUND

7. Plaintiffs purchased assets from Five Star. Former agents and employees of Five Star, the individual Defendants, were not satisfied with the terms of the asset purchase agreement and engaged in a conspiracy to steal intangible assets from GMD to engage in unlawful competition. Plaintiffs encourage lawful and even aggressive competition. Here, however, Defendants attempted to steal intangible assets that rise to the level of trade secrets and attempted to use those assets in competition against Plaintiffs.

8. Plaintiff GMD is in the business of providing a package of services to consumers that includes document preparation for debt validation requests. Essentially, customers have outstanding consumer debt. Plaintiff GMD assists these customers with a debt validation process that in many cases eliminates or reduces the debt. Plaintiff GMD also assists with credit repair and ongoing debt validation services. Plaintiff GMD generally contracts with sales affiliates and these third-party entities and call centers solicit customers on behalf of GMD.

9. Non-public customer data, non-public process information, and non-public affiliate information were the basis of the asset purchase, in large part, from Five Star to Plaintiff GMD. Plaintiffs agreed to pay in excess of four million dollars to purchase these assets from Five Star. Disgruntled with the asset purchase agreement of early March 2015, the individual Defendants engaged in a campaign of misappropriation as follows:

### FIRST CAUSE OF ACTION

**(Misappropriation of Trade Secrets)**
**(As to all Defendants)**

10. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in paragraphs 1 to 9.

11. Plaintiffs enjoy an advantage over their existing competitors based, in part, on the trade secret information they have developed and implemented in their effort to service customers in the debt validation industry.

12. Plaintiffs, and GMD's seller of assets Five Star, have made reasonable efforts under the circumstances to preserve the confidentiality of trade secrets. Such information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Accordingly, the above-described information constitutes "trade secrets" under California Uniform Trade Secrets Act, Cal. Civ. Code Section 3426 *et seq*.

13. Defendants Lubar and Gabor were under an affirmative duty to keep Plaintiffs' confidential, proprietary, and trade secret information secret, and not to use or disclose such information other than for Plaintiffs' benefit without Plaintiffs' authorization. The amount and value of Plaintiffs' data cannot be underestimated. It would require a competitor over one million dollars and years of customer data collection to obtain a database that Defendants' simply attempted to transfer, and did transfer in part. The GMD database includes non-public information including customer names, social security numbers, e-mail addresses, credit card numbers and balances, client logins to client portal, client banking information for drafting of payments, client fee schedules which contain past and future fees, and all notes related to a client case including all related e-mails. The GMD debt validation strategy is processed, in many cases, by third party affiliates. The GMD database also includes affiliate information including affiliate fee structures and pay outs, logins for information for staff, affiliate sales persons' contact information and e-mails, and all payment information for how fees have been shared in the past including a projection of future fees. The database further included all documents for debt disputes and all fax and mail agreements between customers and the company. These assets, taken together, represent the "GMD Database".

14. Defendants Lubar and Gabor misappropriated Plaintiffs' trade secrets through the unauthorized taking and retention of Plaintiffs' trade secret information. In conspiracy with one another, Defendants Lubar and Gabor:

    A. Engaged in a pattern, before and after the March 2015 asset purchase agreement between Five Star and GMD, of sending non-public financial and sales reports to

personal e-mail accounts, sometimes by using their administrative assistants. These reports were non-public and contained non-public financial and market information.

B. Went through Plaintiffs' Customer Relationship Management ("CRM") software and obtaining affiliate contact information and financial reports. The financial reports and targeted affiliate contact information were not public.

C. Stole over 30,000 documents from Plaintiffs' company computers on the eve of Defendants' separation.

D. Created a variety of corporate shell entities, including Global Ventures LLC, Losany Enterprises, LLC, Vant Consulting LLC, and Vant Capital LLC, in an effort to store and exploit Plaintiffs' stolen trade secrets and other proprietary intangible assets.

15. In addition to the aforementioned conduct, Defendants also attempted to "purchase" the database from a vendor that had access to the GMD Database. Defendants also removed, directly or through their administrative assistants at their direction, hard copy files from GMD before their separation.

16. Defendants' directed administrative staff to conduct some of their electronic transfers including directing one assistant to use a Dropbox folder to move approximately 30,000 files and then attempt to delete them subsequently on April 2, 2015 (3:50 PM). Information technology experts have already identified groups of files and affiliate fee schedules that were removed by Defendants.

17. Defendants' actual and threatened misappropriation was and is being carried out without the express or implied authorization of Plaintiffs. Plaintiffs are informed and believe that Defendants obtained the trade secret information directly or indirectly from Plaintiffs and not from generally available information or through their own independent research and efforts. Of note, Plaintiffs do not concede that their collection of data, processes, and documents which constitute the subject trade secrets could be independently developed, if at all, short of several years and in excess of millions of dollars in capital.

18. The actions of Defendants Lubar and Gabor constitute willful misappropriation and/or threatened misappropriation of Plaintiffs' trade secrets under the California Uniform Trade Secrets Act, as codified in Civil Code section 3426 *et seq.*

19. Defendants' actual and threatened misappropriation of Plaintiffs' trade secrets, unless and until enjoined and restrained by order of this Court, is causing and will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs are threatened with losing their intellectual property as well as current and potential business income.

20. Plaintiffs have no adequate remedy at law for the injuries currently being suffered, and the additional injuries that are threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated, and Defendants will continue to engage in wrongful conduct and Plaintiffs will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants are enjoined from engaging in further acts of misappropriation.

21. In addition, as a direct and proximate cause of Defendants' actions including misappropriation of trade secrets, Defendants have been unjustly enriched in an amount to be ascertained at trial, and Plaintiffs have sustained, and will continue to sustain, actual damages in an amount to be proven at trial.

22. Each of the acts of misappropriation was done willfully and maliciously by Defendants, with the deliberate intent to injure Plaintiffs' business and to improve their own emerging businesses and ventures, for financial gain, thereby entitling Plaintiffs to exemplary damages and/or attorneys' fees to be proved at trial pursuant to California Civil Code Section 3246.3(c).

### SECOND CAUSE OF ACTION
### (Breach of Contract)
### (Against0 Defendant Todd Lubar)

23. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in paragraphs 1 to 22.

24. Individual defendant Todd Lubar entered into a written agreement with GMD. Defendant Lubar was involved as a consultant with Five Star before its asset transfer to GMD. GMD executed a release agreement dated April 2, 2015, that provided for separation of Defendant Lubar from the Five Star company and included consideration, over payments, of one million five hundred thousand dollars (the "Lubar Release Agreement"). Plaintiffs performed under the Lubar Release Agreement and paid an initial payment of two hundred fifty thousand dollars ($250,000.00). Defendant Lubar, through one of his many LLCs, worked for GMD from March 11, 2015, to April 2, 2015. During this brief time period, Lubar was paid by GMD in the amount of $39,000.00. In consideration for the Lubar Release Agreement, Lubar's debt to Plaintiffs in the amount of $180,000.00 was forgiven and Glenwinkel made an initial payment to Lubar in the amount of $250,000.00.

25. A true and correct copy of the fully-executed Lubar Release Agreement is attached as **Exhibit A**.

26. Section IV of the Lubar Release Agreement requires that Defendant Lubar return to Plaintiff GMD all confidential materials, property, or company documents.

27. Section VI provides for Attorneys' Fees to a party if judgment is required to enforce the agreement.

28. Section IX of the Lubar Release Agreement includes a Choice of Law and Venue provision: "This Agreement shall be interpreted and enforced pursuant to the laws of the State of California without regard to conflicts of law principles. The parties agree to voluntarily consent to the jurisdiction of all federal and state courts in the State of California."

29. Defendant Lubar breached the Lubar Release Agreement by maintaining intangible assets of GMD after execution of the agreement. Lubar's breach included: taking information belonging to GMD and Glenwinkel without their knowledge or authorization; failing to return Plaintiffs' data after signing the Lubar Release Agreement; and disclosing and exploiting Plaintiffs' proprietary and/or trade secret information to and/or using said information in furtherance of his newly-created business ventures in the debt validation industry.

30. As a proximate result of Defendant Lubar's breach, Plaintiffs have suffered, and will continue to suffer, general and special damages in an amount to be proven at trial. Plaintiffs seek compensation for all damages and losses proximately caused by these breaches.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. Injunctive relief temporarily, preliminarily, and permanently enjoining Defendants, as well as their agents and all persons that act in concert with them, from directly or indirectly:

   A. Obtaining, accessing, or disclosing to anyone (other than their counsel) any of Plaintiffs' data, documents and property taken from or belonging to Plaintiffs that are in any way in Defendants' possession, custody or control;

   B. Accessing, receiving, copying, or disseminating any copies of Plaintiffs' documents or property taken from or belonging to Plaintiffs; and

   C. Engaging in any activities related to the planning, design, or development of debt mitigation companies or services that in any way involve or use the disclosure of Plaintiffs' trade secrets or other confidential or proprietary data.

2. Temporary, preliminary and permanent injunctive relief requiring the immediate return of Plaintiffs' stolen data, in forensically sound fashion, preserving all metadata;

3. Compensatory damages, past and future, in an amount to compensate Plaintiffs;

4. General damages;

5. An accounting to establish, and an order requiring restitution and/or disgorgement of, the sums by which Defendants have been unjustly enriched;

6. Attorneys' fees and costs incurred by virtue of this action;

7. For pre-judgment and post-judgment interest in accordance to any applicable provision of law according to proof;

8. For disgorgement of all profits earned by Defendants to Plaintiff;

9. For such other and further relief as the court may deem just and proper.

Dated: April 14, 2015

By: _____
Gaurav Bobby Kalra (SBN 219483)
Attorney for Plaintiffs